UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
MICHAEL ROBERT RAY,                    )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )   Civil Action No. 05-0876 (RCL)
                                       )
FEDERAL BUREAU OF INVESTIGATION,       )
                                       )
            Defendant.                 )
_____)

## MEMORANDUM OPINION and ORDER

This matter is before the Court on defendant's motion for summary judgment. Having considered the motion, plaintiff's opposition, and the record of this case, the Court will grant the motion in part and deny it in part without prejudice.

### I.  BACKGROUND

In May 2003, plaintiff submitted to the Federal Bureau of Investigation headquarters ("FBIHQ") a request for information pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552.  Complaint ("Compl.") ¶ 5.  Specifically he requested the following:

> [A]ny files and/or records maintained by the Federal Bureau of Investigation including, but not limited to[,] identification records, personal data, history records, investigative files, case notes, and any other record relating to [plaintiff].

Memorandum of Points and Authorities in Support of Motions to File *In Camera* and Under Seal and for Summary Judgment ("Def.'s Mot."), *In Camera* Declaration of David

1

M. Hardy ("Hardy Decl.") ¶ 6 & Ex. A (May 21, 2003 FOIA Information Request).[1]  The FBIHQ denied plaintiff's request pursuant to FOIA Exemption 7(F), to the extent that "production of such law enforcement records or information could reasonably be expected to endanger the life or physical safety of any individual."  Hardy Decl., Ex. D (July 21, 2003 response to Request No. 0980569-000).

Plaintiff challenged the FBIHQ's response by filing an administrative appeal to the Justice Department's Office of Information and Privacy ("OIP").  *Id*. ¶ 10 & Ex. E (July 25, 2003 Notice of Appeal).  The OIP affirmed the FBIHQ's decision, noting that the responsive records were exempt from disclosure under Exemptions 2, 7(C), and 7(F).  Compl., Ex. A (September 30, 2004 Response to Appeal No. 03-3104 and March 14, 2005 response to request for reconsideration).

In this action, plaintiff challenges the FBIHQ's response to his FOIA request.  He demands disclosure in full of the requested records, and an award of fees and costs associated with this action.  Compl. at 3.

## II.  DISCUSSION

### *A.  Summary Judgment Standard*

The Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears

---

[1] The Court denied defendant's motion leave to file its motion *in camera* and under seal on November 23, 2005.  Defendant filed its motion and supporting documents on the Court's electronic docket and served plaintiff on December 5, 2005.

the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

      To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), *reh'g denied*, 763 F.2d 1436 (D.C. Cir. 1985)). The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."[2] *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of

---

     [2]    In support of its motion, defendant submits the declaration of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, of the FBI's Washington, DC Headquarters. Hardy Decl. ¶ 1. In this capacity, Mr. Hardy supervises the Freedom of Information/Privacy Acts Litigation Support Unit. *Id.* ¶ 2. He is familiar with the FBI's procedures for responding to FOIA requests, and is aware of the treatment afforded to plaintiff's FOIA request. *Id.* ¶ 3.

other documents.'" *SafeCard Serv., Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information).  The agency bears the burden of showing that its search was calculated to uncover all relevant documents.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id.*, 684 F.2d at 127.  If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt v. Dep't of State*, 897 F.2d at 542.

The FBI's Central Records System includes records of "administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes."  Hardy Decl. ¶ 15.  General indices, arranged in alphabetical order, are the means by which

information in the Central Records System is retrieved.  *Id.* ¶¶ 16, 19.  Entries in the General Indices fall into two categories: main entries and reference entries.  *Id.*  A "main" entry "carries the name of an individual, organization, activity or the like, which the <u>main</u> subject of a file is maintained in the system."  *Id.* (emphasis in original).  A "reference" entry generally is "a mere mention or reference to an individual, organization, etc., which is located in the body of a communication in a file concerning the investigation of another individual, organization, or event."  *Id.*

FBIHQ staff searched the agency's automated general indices using variations of plaintiff's name as search terms.  *Id*. ¶ 20.  The search yielded two FBIHQ main files, 137B-CO-18414 and 270B-CO-20767, entitled "Confidential Informant" and "Cooperative Witnesses" respectively.  *Id.* ¶¶ 20, 21.  The files dealt with the development of a confidential source, plaintiff, and the bulk of the records in those files were teletypes.[3]  *Id*., Ex. J (introductory paragraph to *Vaughn* Index).

Plaintiff complains that "the only records that the FBI even contemplated releasing were 'tele-types' and computer summaries of some of [his] activities." Memorandum in Support of Dismissal of Defendant Federal Bureau of Investigation's Motion for Summary Judgment ("Pl.'s Opp."), Affidavit of Michael R. Ray ("Pl.'s Aff.") ¶ 11.  He knows "that within the possession of the FBI there are volumes of additional files of which [he is] the subject," and that his participation in a particular criminal investigation should be reflected in "extensive files that were taken, developed and

---

[3]   A teletype is a "communication used to transfer urgent, official narrative and graphic information between field offices, legal attaches, and FBIHQ.  Each teletype message contains a case file number, a caption consisting of the case title, and the office of origin."  Def.'s Mot., Ex. J.

maintained by the FBI's Florence, South Carolina Resident Agency." Pl.'s Aff. ¶¶ 12, 13. In addition, plaintiff maintains that there are "extensive interviews, investigations, and relevant FBI 302 reports" generated by the "FBI's Myrtle Beach[,] South Carolina Resident Agency" during "a through [sic] investigation into [plaintiff] and into criminal offenses which [he] was a participant in; during 2002-2003." *Id.* ¶ 15. Plaintiff argues that defendant failed to conduct an adequate search for responsive records because his request for his "complete file . . . would certainly include any files maintained by the FBI at its various Field Offices and/or Resident Agencies. Such a search and disclosure has not taken place." Pl.'s Opp. at 7.

The fact that the FBIHQ's search did not meet plaintiff's expectations does not lead inevitably to the conclusion that its search was inadequate. "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Perfection is not required. An agency's search is not presumed unreasonable because it fails to find all relevant material. *See Steinberg v. United States Dep't of Justice*, 23 F.3d at 551 (question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate"); *see also Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

A FOIA request must be made in accordance with an agency's "published rules stating the time, place, fees (if any), and procedures to be followed" in making such a request. 5 U.S.C. § 552(a)(3)(A). A request for records maintained by a particular FBI

field office must be submitted directly to that field office.  28 C.F.R. § 16.3(a).  The FBI is not obligated to undertake a search of its field offices' records when a requester submits his request only to its headquarters.  *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system."); *Church of Scientology v. Internal Revenue Serv.*, 792 F.2d 146, 150 (D.C. Cir. 1986) (when agency regulations require that FOIA request be submitted to specific office and requester does not follow regulations, agency not obligated to search additional offices); *Marks v. United States Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (no duty for FBI to search field offices when FOIA request directed only to headquarters); *Marrera v. United States Dep't of Justice,* 622 F.Supp. 51, 54 (D.D.C. 1985) (noting that agency not required to "search every division or field office in response to a FOIA request, especially where the requester has indicated specific areas where responsive documents might be located").  If plaintiff wants records that may be maintained in FBI's South Carolina Field Office, he is free to submit a new FOIA request directly to that office.

Furthermore, plaintiff fails to meet his evidentiary burden in challenging the adequacy of the FBIHQ's search.  He must present evidence rebutting the agency's initial showing of a good faith search, and utterly fails to do so here.  *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).

*C.  Exemptions*

1.  <u>Exemption 2</u>

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). It applies to information "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc). Information is "'predominantly internal' if it does not 'purport to regulate activities among members of the public or set standards to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public.'" *Edmonds v. Fed. Bureau of Investigation*, 272 F.Supp.2d 35, 50 (D.D.C. 2003) (quoting *Cox v. United States Dep't of Justice*, 601 F.2d 1, 5 (D.C.Cir. 1979)). "Predominantly internal documents that deal with trivial administrative matters fall under the 'low 2' exemption." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Exemption is automatic if the material relates to trivial administrative matters of no genuine public interest. *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983). Examples of "low 2" exempt material include "administrative markings such as file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references." *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979).

The FBIHQ withholds one FBI telephone number pursuant to Exemption 2. Hardy Decl. ¶ 34. The declarant explains that the telephone number relates only to

internal agency practices and is used by FBIHQ personnel in the course of official duties. *Id.* The Court concludes, then, that this telephone number is related solely to the FBIHQ's internal practices, and that it is of no interest to the general public. It properly is withheld under Exemption 2.

## 2. Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

The FBIHQ's search for responsive records yielded two files concerning plaintiff, who has served as a confidential source and cooperating witness in FBI investigations conducted pursuant to federal law. *See* Hardy Decl. ¶¶ 21, 42. Plaintiff provided the FBI with information pertaining "to Interstate Transportation of Obscene Matter, Copyright Matter violations, Organized Crime/Drug Investigations and an Insurance

Fraud, Racketeering Enterprise Investigation (Related Substantive Investigations)." *Id.* ¶ 21. The documents related to "the FBI's efforts to prevent the distribution of pornography, combat insurance fraud and battle drug trafficking." *Id.* ¶ 43.

Defendant thus meets the threshold requirement of Exemption 7 by establishing that the relevant records were compiled for law enforcement purposes.

### a. Exemption 7(C)[4]

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

---

[4] The FBIHQ relies on Exemption 6 in conjunction with Exemption 7(C) to withhold the name of one FBI Supervisory Special Agent, and withholds the names of several third parties in whom the FBI and local law enforcement entities had an investigative interest under Exemption 6 in conjunction with Exemptions 7(C), 7(D), and 7(F). Hardy Decl. ¶¶ 38, 39. The Court concludes that all this information properly is withheld under Exemption 7(C), and will not address the applicability of the other exemptions. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

i. Law Enforcement Officers and Support Personnel

The name of one FBI Supervisory Special Agent was withheld under Exemption 7(C).  Hardy Decl. ¶ 46.  This agent "was responsible for conducting, supervising, and/or maintaining the investigative activities reported in these investigatory files."  *Id*.  Disclosure of his name would compromise his effectiveness in conducting future investigations, and may subject him to "unnecessary, unofficial questioning as to the conduct of [the] investigation."  *Id.*  In addition, persons targeted by his law enforcement actions may "carry a grudge which may last for years, and [] seek revenge on the [Special Agents] involved in the investigation."  *Id.*  Publicity associated with release of the agent's name "could trigger hostility toward the [him]," and otherwise disrupt his private life.  *Id.*

The FBIHQ also withheld the names of three FBI support personnel who were assigned tasks related to these investigations.  *Id*. ¶ 47.  Because these persons had "access [to] information concerning official law enforcement investigations," they could "become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released."  *Id.*

Redaction of the names of federal, state and local law enforcement personnel under similar circumstances routinely is upheld.  *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1987) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting

from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).  Disclosure of the names of the Supervisory Special Agent and the FBI support personnel serves no public interest as it sheds no light on the FBI's activities or operations.  The individuals' privacy interests prevail.

### ii.  Third Parties of Investigative Interest

Similar justification for non-disclosure applies where the FBIHQ invokes Exemption 7(C) to withhold the identities of and personal information about third parties "in whom the FBI and/or local law enforcement had an investigative interest as a result of the information furnished by plaintiff." Hardy Decl. ¶ 48.  Several of these individuals "were considered by the FBI to be subjects of one or more of the following investigations: Interstate Transportation of Obscene Matters, Copyright Matters, Organized Crime/Drug Investigations, Insurance Fraud and Racketeering Enterprise Investigation." *Id.*  The personal information in the records included "FBI file numbers, names, aliases, business names and addresses and certain information which links them to criminal activities." *Id.*  Release of this information "could subject [these individuals] to harassment or embarrassment, as well as undue public attention." *Id.*

Exemption 7(C) recognizes that the stigma of being associated with a law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Serv., Inc. v. Securities and Exchange Comm'n*,

926 F.2d at 1205-06.  The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence."  *Davis v. United States Dep't of Justice*, 968 F.2d at 1282.  Absent any showing of a public interest in disclosure, the FBIHQ properly withholds the names and personal information about these third parties of investigative interest to the FBI and local law enforcement.  *See, e.g., Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Serv., Inc. v. Securites and Exchange Comm'n*, 926 F.2d at 1206 (holding that "names and address of private individuals appearing in files within the ambit of Exemption 7(C) [are] exempt from disclosure").

Plaintiff argues that the passage of time renders Exemption 7(C) inapplicable.  *See* Pl.'s Opp. at 21-22.   "The simple fact that the information was compiled ten to thirteen years ago, removes any exemption to government may have once possessed."  *Id.* at 22.  Further, he argues that the passage of time and the retirement of Special Agents involved in his case diminishes their privacy interests.  *Id.* at 16-17.  This argument fails, however.  "Confidentiality interests cannot be waived through . . . the passage of time."  *Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 297 (2d Cir. 1999); *Maynard v. Central Intelligence Agency*, 986 F.2d at 566 n.21.

b.  Exemptions 7(D) and 7(F)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).

Plaintiff was "a permanent symbol source informant who reported to the FBI on a regular basis under an express assurance of confidentiality."[5]  Hardy Decl. ¶ 52. The FBIHQ relied on Exemptions 2, 7(D),and 7(F) to withhold information that identifies or refers to plaintiff himself and information he provided to the FBI, in order to "protect the plaintiff, his permanent symbol source number, his confidential source file numbers and other identifying information in these records[,] all of which would reveal plaintiff to be an informant and cooperating witness of the FBI which could place him in grave danger while incarcerated."  *Id.* ¶ 59.

---

[5]  A symbol source number "is used as an administrative reporting tool to protect the actual, sensitive identity of an informant in written documents generated by the FBI."  Hardy Decl. ¶ 28 n.4.  FBI records "do not refer to the confidential source by his true name, but rather by his individually assigned permanent symbol source number.  *Id.* ¶ 28.  The informant file number also "is unique to the particular confidential informant and is used only in documentation relating to that particular informant."  *Id.* ¶ 31.

Plaintiff objects to the withholding of information under Exemptions 7(D) and 7(F). Pl.'s Opp. at 22-23. "There is no doubt to the Plaintiff as to who the actual source of the information 'he provided' was provided by." *Id*. at 22. He is the confidential informant, and he already knows both his code name and code number. *Id.* The FBIHQ need not protect plaintiff, he asserts, because he is "not in fear for [his] safety [] in relation to the disclosure of any FBI records about [him]; or about [his] past offenses, or past contacts with the FBI." Pl.'s Aff. ¶ 17.

The FOIA is a disclosure statute. *See generally Chrysler Corp. v. Brown*, 441 U.S. 281, 291-94 (1979). The FBI's duty to disclose information pursuant to the FOIA does not relieve the agency of its obligation to honor its agreements with confidential sources to protect their identities and any information they provide in confidence. Exemption 7(D) not only protects confidential sources, but also protects the ability of law enforcement agencies to obtain relevant information from such sources. *See McDonnell v. United States*, 4 F.3d 1227, 1258 (3d Cir. 1993) ("goal of Exemption 7(D) to protect the ability of law enforcement agencies to obtain the cooperation of persons having relevant information and who expect a degree of confidentiality in return for their cooperation"). The FBIHQ establishes that the informant, plaintiff, provided information under an express grant of confidentiality. "[O]nce the agency receives information from a confidential source during the course of a legitimate criminal investigation . . . *all* such information obtained from the confidential source receives protection." *Parker v. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991) (citing *Lesar v. United States Dep't of Justice*, 636 F.2d at 492 & n.114) (emphasis added). An individual may waive

confidentiality, however.  *See Parker Dep't of Justice*, 934 F.2d at 378 (quoting *Dow Jones & Co. v. United States Dep't of Justice*, 908 F.2d 1006, 1011 (D.C. Cir.) (waiver may be demonstrated by absolutely solid evidence showing that source manifested complete disregard for confidentiality), *reh'g denied en banc*, 918 F.2d 571(D.C. Cir. 1990)); *see also Blanton v. Fed. Bureau of Investigation*, 63 F.Supp. 2d 35, 47 (D.D.C. 1999) (information regarding individuals who extensively publicized status as FBI confidential informants not exempt from disclosure under Exemptions 7(C) and 7(D)); *cf. Sherman v. United States Dep't of the Army*, 244 F.3d 357, 363-64 (5th Cir. 2001) (citing *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. at 763-65) (individual whose privacy interests are protected by Exemption 6, not agency holding information at issue, may waive those interests).

Plaintiff clearly states that he "has waived any reliance he may have had," and that the "FBI has no such duty of protection to afford the Plaintiff."  Pl.'s Opp. at 23.  In light of this apparent waiver, the Court is not inclined to protect plaintiff from information about himself.  *See United States Dep't of Justice v. Julian*, 486 U.S. 1, 13-14 (1988) (rejecting argument that Exemption 5 bars disclosure of a presentence investigation report "when the individual requesting discovery is the subject of the report"); *Fine v. United States Dep't of Energy*, 823 F.Supp. 888, 909 (D.N.M. 1993) (concluding that there was no unwarranted invasion of privacy under Exemption 7(C) in disclosure of document containing "only allegations and statements by plaintiff himself").  Plaintiff accepts any risk attendant to disclosure of the records.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment [Dkt. #17] is GRANTED IN PART and DENIED IN PART.  The FBIHQ conducted a reasonable and adequate search for records responsive to plaintiff's FOIA request, properly withheld one FBI telephone number under Exemption 2, and properly withheld under Exemption 7(C) the name of an FBI Supervisory Special Agent, the names of FBI support personnel, and the names of third parties of investigatory interest to the FBI and other law enforcement agencies.  In all other respects, defendant's motion is DENIED WITHOUT PREJUDICE.  It is further

ORDERED that, within 30 days of entry of this Order, defendant either shall release the records to plaintiff and so notify the Court, or shall file a renewed motion.

SO ORDERED.

                                              /s/
                                  ROYCE C. LAMBERTH
                                  United States District Judge

Date:  July 24, 2006